Good afternoon, Your Honors, and may it please the Court. My name is Jessica Sklarsky on behalf of Plaintiff's Appellants. I would like to reserve five minutes for rebuttal. Watch the clock and I'll try to help you. Thank you. The question before the Court today is narrow. Have plaintiffs demonstrated in Article III, Injury in Fact, for their pre-enforcement vagueness challenge against Arizona's Reason Scheme? The District Court determined that plaintiffs failed to make this demonstration, but that conclusion is wrong. Based on the controlling law of this circuit and the Supreme Court, plaintiffs demonstrate at least two Article III injuries. First, plaintiffs suffer undisputed economic harms that are the classic injury in fact. Although the District Court recognized that the scheme would chill plaintiffs and other physicians from providing care, even care that may very well remain legal under the scheme, the Court failed to credit or even consider plaintiffs' associated financial losses. Is it your argument that the costs associated with overcompliance alone satisfy standing claim, or should we consider the physicians' overcompliance as part of the first Driehaus factor? It's plaintiffs' contention that these are two separate Article III injuries. Second, even though the economic harms alone would satisfy Article III, plaintiffs also establish the second Article III injury, threat of prosecution, based on the standard laid out by the Supreme Court in Driehaus and as applied by this Court. I read the District Court's order as not so much focusing on Driehaus factors two and three, but on the first one. And I thought the District Court read the first one as requiring that the course of therefore thought that Dobbs eroded the standing on the first ground. Is that your reading of the order also? In other words, I don't read the district judges saying you really don't allege a concrete harm or a threat of prosecution. I read them as saying you fail on the first Driehaus factor. Am I misreading the order? I think your Honor is correct that the District Court ultimately determined that plaintiffs' failed the first Driehaus factor, but the ultimate conclusion based on that determination by the District Court that there was no Article III injury in fact here at all and that therefore it would not consider the merits of plaintiffs' claim. So I want to take you back to that because I'm trying to figure out how we analyze this. In other words, I guess there's two ways to come at it. One is to say you should argue that your clients do satisfy the first Driehaus factor. The second way is to argue that it doesn't really matter because they have concrete injuries or whatever. So I'm trying to figure out what your argument is. What is it? Is it the first or the second or is it both? It is certainly both, Your Honor. And if I could, I'd like to turn to the first Driehaus factor and how the District Court made legal error there. Instead of relying on Supreme Court or Ninth Circuit precedent, the District Court instead turned to an isolated and flawed Eleventh Circuit opinion, Bankshot Billiards v. City of Ocala. And based on relying on that opinion, as you're aware, the court determined that in the pre-enforcement vagueness context, intended conduct is only arguably affected with a constitutional interest when the law's vagueness chills the exercise of another constitutional right. But that is not the law. And it is contrary to binding Supreme Court and Ninth Circuit precedent. Bankshot's separate constitutional injury requirement misconstrues and ignores the due process harms that vague laws inflict. And it is contrary to Supreme Court precedent and the fundamental principles that underlie the Article III injury requirement. First, Bankshot gets wrong that vague laws violate the due process rights of those they govern regardless of whether the underlying conduct is constitutionally protected and even in the absence of an enforcement action. Vague laws force those they govern to either avoid doing anything that is even arguably covered by the law or to engage in that conduct with the constant threat of arbitrary enforcement. So are all vague laws subject to pre-enforcement challenges? It depends. No, Your Honor. In order for the vagueness doctrine to apply, it must be a law that through its enforcement threatens a life, liberty, or property interest. And also a plaintiff needs to allege that the law is vague as applied to their own conduct. So unlike in the over-breath context, that is a requirement in order to effectively state Assuming that vagueness alone satisfies the first three-house factor, you still have to satisfy the second two factors. That's correct. To bring a pre-enforcement challenge. Yes, that's certainly correct. I want to take you off script for a second and ask a question. We all know that there's a case going to be argued in the Arizona Supreme Court later this year in which the court will try to figure out what the governing statute is in Arizona. Would the outcome of that case have any relevance to the outcome of this case? Your Honor, it certainly may have relevance. But there is irreparable harm occurring right now, both because plaintiffs' constitutional rights are being violated and because they are being forced to steer far wider of the laws of vagueness. And so waiting for the Supreme Court, the Arizona Supreme Court, to rule is not necessary here and would allow these harms to continue. Well, but if the Arizona Supreme, I understand, I take your point about injury in the interim. And I wish courts were quicker in dealing with cases than they might be. But if the Arizona Supreme Court were to determine that the governing statute in Arizona forbids all abortions, which is, I think, one of the choices that are being given, your clients' claims would, at that point, be moved, would they not? They potentially would, Your Honor. That's correct. Turning back to the first three-house factor, if I may, I do want to touch upon both that the Supreme Court has made clear in Village of Hoffman Estates that it is irrelevant whether the underlying conduct is constitutionally protected for the vagueness doctrine to apply. So as we've sort of already covered, when a litigant asserts that their intended conduct is governed by a vague law, their intended conduct is arguably affected with a constitutional due process interest. So where, if at all in the analysis, does the sort of plus or separate independent constitutional right play a role in consideration of whether or not a statute is unconstitutionally vague? Whether or not a vague law chills the exercise of a constitutional right may be relevant to the merits determination about whether the law speaks with sufficient clarity to avoid arbitrary enforcement. So in this case, the district court looked at the same exact set of laws, the reason scheme, and determined that it was, in fact, unconstitutionally vague under a regime pre-Dobbs. And do you think that analysis changes when the district court, if we were to agree with your position and remand back to the district court, is there a different analysis that occurs? Do we even need to address that issue, reach that issue? You need not address that issue here today because that question would go to the merits and we are only here on the limited question of justiciability. But it is certainly plaintiff's contention that a very stringent review, vagueness review, would still apply given the extremely severe penalties, criminal and civil and licensure, that are attached to this law. And so it's certainly plaintiff's contention that the same result should be the outcome before the district court, even in spite of Dobbs. But whether or not this law is, in fact, vague is not an issue in front of us. That's correct, Your Honor. Can you address, I think this is an implicit argument that your friends make, but I'm not sure it's explicit. So if I'm making it and they didn't, then forgive me. Is there an argument that Driehaus somehow altered the status quo ante, that maybe at the time of Huffman, all you needed was vagueness to establish the first prong of standing, but that somehow the Supreme Court and Driehaus added a requirement? That's what the 11th Circuit seemed to believe. Well, the 11th Circuit opinion at issue here actually preceded Driehaus. The original language that's quoted in the Driehaus opinion emanates from Babbitt. Right. It's strange because these are all cases in which standing is found. And I think the court is describing why the circumstances in Driehaus are the same as those in Babbitt. But I guess my question is, do you read Driehaus in any way as limiting standing? Or is it a decision that expands the standing doctrine? Plaintiffs do not read Driehaus as limiting standing. If you look throughout the history of these Supreme Court cases, they have never distinguished between the constitutional due process harms and other constitutional injuries. And that is actually something that the Second Circuit expressly recognized in the Knife Rights case. And it is actually what the Ninth Circuit has already followed in Baya del Sol, where this court, post-Driehaus, allowed a pre-enforcement vagueness claim to proceed, even though there were no allegations that the vague law chilled the exercise of any constitutionally protected conduct. I would also draw the court's attention to all of the court's precedents that have made it abundantly clear that a litigant need not vet the farm or pursue their collective activities at their peril in order to receive judicial review. And even though most of those cases have involved constitutionally protected conduct, not all have. MedImmune is perhaps the preeminent example of that. That was a patent infringement dispute. There was no constitutional claim alleged and no constitutional injuries. And the Supreme Court still granted pre-enforcement review, focusing on the imminency of the harm. So the Bank Shot Rule, which would force plaintiffs to risk arbitrary prosecution under a law that they claim is unconstitutionally vague as the only means to seek clarity, is plainly at odds with this extensive precedent. And that, frankly, is consistent. These existing Supreme Court precedents make sense in light of the Article III injury requirement. The injury requirement's purpose is to ensure that a litigant has an adequate personal stake in the matter. Article III, the case and controversy requirement, does not require a constitutional injury or a constitutional harm. And yet the Bank Shot Rule would require not only one, but two constitutional injuries in order to gain access to the courts. Pre-enforcement. Pre-enforcement. And that would effectively create a new prudential bar to standing that would cause this and other courts to abdicate its duty to decide a federal constitutional question that is within its jurisdiction. Does the Constitution require that pre-enforcement standing be available? The Constitution does not require that pre-enforcement standing be available. But we're dealing here with prudential rules that the court has set up. The court, I take it, could constitutionally say, wait until somebody tries to enforce this statute and then we'll deal with it. I would not suggest that the court has set up. No, and I'm not saying it has set up. I'm asking, could the Supreme Court, consistent with the Constitution, say we'll only take up challenges to a law when somebody tries to enforce it? There are certainly prudential bars to standing that exist. However, prudential standing bars have come under disfavor by the Supreme Court of late. And that's because if you look to cases like Bagot, they speak to the importance of federal courts deciding questions that are within their jurisdiction to decide. And this case certainly is within the court's jurisdiction. So once you put the erroneous bank shot rule aside, plaintiff's intended conduct here is clearly arguably affected with a constitutional interest. Plaintiff's conduct is also arguably prescribed by the statute. And there is also a credible threat of prosecution that exists. I see that I'm near my five minute time. And it's your time. So if you want to keep going, that's fine. If you want to you want to save the rest for rebuttal, it's up to you. I'll reserve the rest of my time for rebuttal. Thank you, Your Honor. Judge Hurwitz. Oh, I'm sorry. Before you sit down, Judge Gould has a question. Yes, Your Honor. I have no question for the advocate, but I have a comment for Callie. If Callie's listening, the audio is a little hard to follow. Callie is listening and nodding, so let's see if she can fix it. The audio is tough to follow. And maybe there's some adjustment that Callie could make. Is Callie responding? Callie is. Does that help, Judge? Okay. All right, counsel is going to begin her argument. And if you've still got problems with hearing, let us know. You may proceed. Thank you, Your Honor. May it please the court, I'm Denise Harley on behalf of the Arizona legislative leaders. Plaintiffs do not say a single case where pre-enforcement standing was found when there was a disavowal of enforcement by the enforcing authorities. So you're focusing on, with this argument, with the third, on the third Driehaus factor, are you not? I can. I think that's an arrow. Well, but that's what the third Driehaus factor talks about, is the possibility of enforcement. I was beginning with that, Your Honor, because I do think that is an easy. So here's my difficulty. I know the Attorney General has said she doesn't intend to enforce this, but we have 15 county attorneys. Do your clients really believe that no county attorney is going to seek to enforce this statute? Well, 15 county attorneys are all defendants in this case. The Attorney General has been designated the single representative. All of them have ceded to her. It's in the district court record, and so she is the official representative. She has filed on behalf of all defendants, and she hasn't expressed disavowal of enforcing this law. She hasn't expressed disavowal on her own. She's not disavowed the intention of any county attorney to enforce this law, has she? Well, absolutely. And Governor Hobbs's executive order also in June says that all authority will be consolidated under the Attorney General to enforce these laws. Can you point me to where in the record you're finding Attorney General Mays' statement stating on behalf of all 15 county attorneys that they will not enforce the Reason Scheme on doctors? So in the district court, all 15 county attorneys designated the Attorney General their single representative for this case. Obviously, there are multiple statements by Attorney General Mays disclaiming enforcement. But this is a motion to dismiss on the complaint. So tell me where in the record of this proceeding there's a disclaimer by anyone of the intention to enforce the statute. Well, the Attorney General's counsel is here today, but I do know I checked her website this morning. No, I'm asking about the record of this proceeding. Her website also says she thinks this law is unconstitutional. So if I'm not going to pay attention to that, I may not pay attention to the rest of her website. Just tell me where in the record. Well, I'll apologize that I don't know the exact docket entry number, but it is in the docket where she is representing all of the defendants. No, we're missing each other. I'm sorry. I understand she appeared on behalf of all the defendants. My question is, is there a disclaimer in the record of this case on behalf of either herself or the other defendants of an intention to enforce the statute? I believe in this case she has formally taken no position. Certainly, an express disavowal is not required. And plaintiff's most imminent allegation so far of a credible threat of enforcement is that three years from now, in the year 2026, some unknown individual may run for Arizona Attorney General, might be elected, and might then take a different view of the law. But more is required. And that is why under Lujan, the injury has to be certainly impending. Otherwise, it's too speculative and there is not a justiciable case. So let me just take an example. Is there any indication that the Pinal County attorney does not intend to enforce this law? Well, more is required than that, even under Article 3. So for the credible threat of enforcement test, the question is whether an official has communicated a specific warning or threat of enforcement,  And obviously we can't have a past history with a new law. So I guess my question is, does the law really require that a credible threat be communicated? If the state of Arizona passes a statute and the two leaders of the legislature are here defending its constitutionality, isn't that enough to show that there is a credible, not a certain, but a credible threat of enforcement? It's not, Your Honor, not under the case law. And in fact, the burden goes the other way. So it's plaintiff's burden to establish standing and to show those factors. Plaintiffs haven't put one fact in there. So let me ask you this question. So our case, Tingley v. Ferguson, which is a 2022 Ninth Circuit case, sets forth the factors to consider whether there is a credible threat of prosecution. And the very first factor is whether the plaintiff has a concrete plan to violate the law. So here we have the plaintiffs in their complaint articulating their plan to provide the very services that would potentially come under the umbrella of the reason scheme. They're saying, we would provide these services, or at least some services, but for this law that very seriously threatens our liberty interests. There's criminal prosecution. There's fines. Why isn't that first factor met based solely on the complaint that has been filed by the plaintiffs? Well, Tingley cuts the other way. So here plaintiffs have not alleged that they would knowingly perform abortions for the sole reason of a nonfatal genetic condition. But do they need to say that they are going to, I mean, that kind of goes to the merits of the claim, which is that we understand exactly what all of these statutes are prohibiting. What they're saying is we've curtailed our medical practices because we are unclear what in fact violates the many different statutes that comprise of the reason scheme. And we are not providing services. We're over complying because of the concern that we will be criminally prosecuted. And in fact, these laws exist. So there's, you know, unless we have statements from all 15 county attorneys that they're not going to enforce this law. I don't, I don't, I'm struggling to understand how this first element isn't satisfied simply because the plaintiffs have said they are not providing these services that they otherwise would provide. Well, there are three elements and the mere existence of a law is not sufficient for a direct injury. Thomas on bond from this court says so. But to the Tingley point, let me try to distinguish that case there. There, the plaintiff alleged a specific past conduct and intent to engage in future conduct that all parties agreed would violate the law. And the government not only refused to disavow enforcement, but said it would enforce the counseling ban as it did other professional regulations. So you can see the distinction there. What plaintiffs standing in your perspective would mean is that virtually anyone could look at a law, could say, I'm not sure what that means. I'm going to do something or not do something. And that would be enough for a federal court to weigh in and adjudicate the merits of that claim on a facial challenge. Now, you've got something a little bit different in this case than most cases. For whatever reason, the legislature included a private enforcement mechanism in this statute. Correct? Yes, Your Honor. So it's not simply the 15 county attorneys and the attorney general that the plaintiffs must be concerned about possible enforcement from, but from any father of a child that's involved, a fetus that's involved in one of these cases. Does that change the analysis? How can they be certain, even if the county attorneys say, gee, we think this is a stupid law and we're never going to enforce it, that a private individual won't seek to enforce it against them since the state apparently has given that power to a private individual? Well, the test isn't that there has to be no conceivable possibility of enforcement ever. It is that plaintiffs have to show a credible threat of enforcement. But now we know there are, and I don't impugn anybody's motives here, we know there are lots of people who believe this is an important law. It passed the legislature. There was testimony in favor of it. And it includes a provision, it's a failsafe. If our public officials won't enforce it, damn it, one of the proponents will if given the opportunity to. Doesn't that provide a much more credible threat of enforcement in this circumstance, no matter what the politicians think? Well, that's not a part of this case because the injunction couldn't run to those unknown theoretical third parties. It also would be speculation upon speculation that there would be a child's father, that there would be an election. There would be an injunction against the enforcement of the law, which of course would prevent those unnamed third parties from enforcing it. I mean, the injunction runs to the defendants. So you think that if the district court found the law unconstitutional, it could nonetheless be enforced by a private individual who wasn't a party to that case? I think procedurally, the way the injunction works is that— No, that's not the question I asked. You're not really contending that if the district court found this to be unconstitutional, that a private individual could have nonetheless enforce it on the theory that he wasn't a party to the first lawsuit? Certainly, if the law was declared unconstitutional, there would be no ability for anyone to invoke the law. So why don't these—I know you want to get to other issues, so I don't want to keep you on this forever— but why don't these defendants have a credible fear of enforcement of this law, not only by those elected, but by the people to whom the legislature has delegated the power to enforce it? For the same reason that the en banc Ninth Circuit panel and Thomas V. Anchorage Equal Rights Commission said there was not a credible threat of enforcement there, where the record was devoid of any threat, generalized or specific, directed towards plaintiffs, and the court said that even though it's theoretically possible— this is just like Clapper— the theoretical possibility of an injury sometime in the future is too conjectural when it's not imminent. It's the same reason Arizona v. Yellen cuts the other way as well, where not only had the government failed to disavow enforcement, but the Treasury Department had sent a letter saying that it would enforce the provision that Arizona was challenging, and Arizona had engaged in the concrete, specific steps that were necessary to lay the predicate so that that next imminent step would be the enforcement that the Treasury Department was threatening. So that's completely different here, where we have no government official that has even hinted at suggesting that they would enforce this law against anyone, let alone against plaintiffs. And that's why the district court, I think, said this is a question— the issue is timing here. When a credible threat of enforcement arises that is imminent and meets the test that's in the Supreme Court and Ninth Circuit case law, that would be the day that plaintiffs may have an article of reentry. I want to ask you the same question I asked your friend. Do you read the district court opinion as finding there's no credible threat of enforcement or only as finding that the first treehouse factor isn't met? I think the district court did focus on the first treehouse factor. I think Your Honor is absolutely correct in that. So if we thought that the issue of whether there was a credible threat of enforcement were dispositive, isn't that an issue we ought to ask the district court to address in the first instance? On de novo review, Your Honor, I was thinking that that might be an easier ground for this panel to decide rather than grapple with if there were a— But it's a fact—it's sort of a factual issue. And it seems to me that if the district court were focused on it, it might well—it might have the attorney generals there and ask what the possibilities are of the county attorneys. But you do agree the district court didn't make that finding. It made the finding—it made what we've been calling the first factor treehouse finding. That's right. I still think it's a legal question, though, whether any official has communicated a threat. And there's plaintiffs that put nothing in the record where any— So I think you—I think there's agreement that the district court— and I certainly read the district court ruling to be pinging its determination on the first treehouse factor, which there was no injury, in fact, because there was not this sort of underlying or additional constitutional right after Dobbs. So addressing that issue, which I don't think that you have addressed yet, and I want to give you an opportunity to do so, isn't the threat of prosecution under an allegedly vague law, which is what plaintiffs have alleged, itself a constitutional due process injury? I mean, it doesn't require this additional constitutional right because itself—and I think the amicus brief in this case is the one that sort of really lays this argument out fully, which is, isn't that in and of itself a constitutional due process injury that gives rise to the Article III standing? And in answering this question, I'd really like for you to be able to tell us why Lujan, treehouse, Yellen, Valle del Sol, this entire line of cases that deal with precisely this issue, are wrong. So I don't disagree with those cases. I think that treehouse says effective the constitutional interest and the overwhelming body of the case law says the same. Certainly, there are due process rights to not be subject to vague laws. However, in the context of a pre-enforcement facial challenge for vagueness, more is required to have standing to challenge that. Huffman is a good example in my mind. Huffman is a pre-enforcement challenge to a statute that involves— that's allegedly vague because it doesn't sufficiently describe what drug paraphernalia may be. There's no underlying constitutional right to carry around spoons or Bunsen burners or whatever. So that's a case in which there is no independent constitutional right at stake except the right to be free from vague laws. So why doesn't that answer the question? Sure. Well, I would say there's also not a standing or rightness analysis in that case, so it doesn't necessarily help us because it doesn't dig in on that. There was, however, letters from the municipal attorney warning, saying there would be— Right, but now we're going to other prongs. If we just think about the first treehouse prong, which says that the conduct has to be arguably affected with a constitutional interest, why isn't your conduct arguably affected with a constitutional interest when you are afraid that a vague law may be enforced against you? Again, I'm asking you to assume that there's a credible fear here. In isolation, only the first factor. I would perhaps even go further and say that there is a speech allegation here, and certainly I would concede that free speech is affected with a constitutional interest. So I'm not sure that necessarily would remove this whole case. The district court dipped a little into the merits to sort of tease out why that speech claim really fell apart in terms of a speech claim, but certainly there is a constitutional interest on that. But if we're only focused—I mean, your answer interests me because if we only focus on the first treehouse factor, which is I think the only factor the district court based its lack of standing decision on, isn't it just wrong to say that a vagueness claim doesn't satisfy the first treehouse factor? Judge Hurwitz, what was your question? My question was—I'm sorry, I was back away from the microphone. My question was, isn't it wrong, given Supreme Court precedent, to say that a vagueness claim doesn't satisfy on its own the first treehouse factor without a claim that the vague statute somehow chills constitutionally protected conduct? That's a better question than the one I asked, so why don't you answer that one? Sure. Well, I think the way your Honor put it to my friend and law school classmate, Ms. Slarsky, was perhaps illuminating in that maybe it's a descriptor, right? Maybe it's a descriptor because that's what was happening in Treehouse and Babbitt, and that is what's happening in the overwhelming majority of these cases. And so that's why, again, I'm focusing on the total lack of any hint of enforcement here, just a vowel of enforcement even, for why that would be an easier road for this court rather than trying to grapple in if there is a question about what's affected with a constitutional interest and whether that is required. Because it can't just be the first prong. All of the prongs are required. And here we don't even have a factual, concrete, specific plan of what plaintiffs intend to do that any official has suggested they can't do. And that is why they are pointing ahead to future elections for this idea that hypothetically, speculatively, sometime in the future, maybe there would be someone willing to enforce the law, apparently for conduct that, however, they are not even stating that they are doing at this time. Well, aren't they contending that there's conduct that they're not doing? In other words, what they're saying is, and I'm focusing now on the part of the statute that says it's a crime to solicit or accept funds to perform an abortion. That part of the statute doesn't say solely. It says based on, well, I wouldn't say selection, to make it simpler so I don't have to repeat all the language. Aren't they saying they're just not clear what they can do, given that part of the statute, because they're in the business of accepting funds to perform abortions? Sure. Well, that would obviously be a duplicative statute and oddly redundant if soliciting monies to fund abortion meant the exact same thing as performing abortion. It not only says soliciting, it says accepting, doesn't it? Accepting monies to fund an abortion. Yes. Yeah. That does say, and we're waiting to the merits, but I was happy to go there with you. It does say because of, and it says knowingly. So that part of the statute has a knowingly mens rea requirement, same thing, and because of, which under Arizona law and federal case law, because of is treated as a but-for cause. So even there, it's very clear. This is useful because you represent the legislators, and of course their interpretation of the statute isn't entitled to any greater weight than anybody else's because they can't interpret it after they pass it. But your reading of this is that if a woman comes to a doctor and says, gee, I have 14 children, I live in a shoe, I don't want to have many more children, so I would like to terminate my pregnancy for that reason. But there's also a side benefit here, which is that there's a genetic defect in this child, and I don't wish to bear a child for that reason. She is not violating the law? Well, she is never violating the law. The pregnant woman is never violating the law. You're right. The doctor who's performing the abortion is not violating the law. That's correct. So the woman has to say, has to make known to the doctor that this is the sole reason that she's seeking it? That's right, and that's exactly why the plaintiff... And the doctor has no duty of inquiry. That's right. That's exactly why the plaintiffs are making this argument that they're declining to have conversations because they don't want to acquire the knowledge that would mean they then cannot perform the illegal conduct. The district court, I think, handled this very well. So your client's interpretation of the law is that if a woman comes in to see a doctor and says, my child has a genetic defect, I would like an abortion, the doctor says, I can perform it as long as you don't tell me that's the sole reason, and don't say a word, and then the statute is not violated? The prohibited conduct is knowingly performing an abortion for the sole reason there's a non-failure statute. I understand what the prohibited conduct is. I'm asking you what your client's view of the statute is under that circumstance. Does that not violate the statute? That would be very helpful information for the plaintiff's lawyers to have. I think you just stated exactly what the statute says, so that's correct. So under my hypothetical, if a woman comes in to see a doctor and says, my child has a genetic defect, I would like an abortion, if the doctor does not thereafter acquire information that that is the sole reason that she wants the abortion, the doctor is free under the statute to perform the abortion? Right, that absolutely does not violate the statute. Really? Correct. Okay. Yeah. Judge Gould? I have no questions. I think we've used up all your time with our questions. We would ask the court to affirm the district court's denial for lack of standing. Thank you. Thank you. Counsel, I think you've got some rebuttal time left. Your Honors, first I would just like to quickly address the contention that plaintiff's intended course of conduct is not arguably prescribed by the statute. Plaintiffs would like to be able to provide as much care as is legally permitted under the scheme, but they can't because they don't know what is legal under it. The district court already determined when looking at the statute that plaintiffs would indeed be chilled from providing care whenever a patient's motive might be ambiguous or there is any circumstantial evidence that to an outside observer might indicate that the patient had a prohibited motive because that is what both common sense and the evidence dictated. Turning to the threat of prosecution. I'm still interested in the response that your friend gave. I'm not going to put the Attorney General on the spot here, but if you had a stipulation from the Attorney General and the state of Arizona that the statute did not reach the conduct that I just described, it might make the sponsors of the statute quite unhappy. But if you had that stipulation, would you have a real threat of enforcement? There is no such stipulation or binding stipulation here. It would change the situation before this court, but that just is not the situation that's before us today. Perhaps Mr. Arrowsmith might be willing to enter into that stipulation, but I'm not sure that correctly reads the law. But if that's the state's position and it's the plaintiff's and it's the position of the legislative leaders, it seems to me we don't have a problem at all. I think those who sponsored the legislation might be irate, but I'm not sure that we have a justiciable problem. I think there might be separation of powers issues with that given that that is, as the district court determined, not a reasonable interpretation of the statute. And it also might not bind the private parties who wanted to enforce it. Correct, and would also need to be binding to have any merit or weight. But turning to the credible threat of prosecution here, I just want to address the attorney general's views of the statute as well as the executive order. Both of those factors don't eliminate the threat here, both because it is unclear whether the governor has the authority to centralize criminal prosecutions within the attorney general. But even if the governor had that authority, it still wouldn't eliminate the threat here. Two government agencies that my opposing counsel did not reference are the Arizona Department of Health Services and the Arizona Medical Board, which can inflict severe licensure penalties, including revocation of a license. One of them is under the executive branch control of the government, the Arizona Department of Health Services. Not the Arizona Medical Board. That's correct. That's why I said one of them. And the Arizona Medical Board has made clear in filings to the district court that they will comply with the laws that are in effect and they will enforce them against the doctors that they govern. So there is a very real threat from those entities that they will take action against physicians, even putting the county attorney on the side. Can you address the private enforcement provision? We rarely see these, although they're increasingly common in statutes. What effect does that have in your view on the credible threat of enforcement? It only underscores the credible threat here. Actually, the Supreme Court addressed this point in Driehaus where there was also a private right for litigants there to file complaints. And the Supreme Court held in Driehaus that where in private individuals who are not governed by any ethical guidelines or codes of conduct are more likely to file frivolous suits and that elevates the credible threat. So too is the case here. And finally, my opposing counsel cast aside the statute of limitations, but that is a real concern given that the statute of limitations under this statute is seven years and both the governor's and the attorney general's terms are only four years. And these policies could be easily reversed. Right, but if we had absolute assurance that this statute wouldn't be enforced for the next four years, then your pre-enforcement challenge would have less effect, wouldn't it? There's simply no way for it to be made absolutely clear that this couldn't be enforced. No, I understand. You're fighting the hypothetical. Can you point me to where in the record the medical board has indicated or filed with the court its intentions to enforce the laws as to its licensed members? Yes, Your Honor. I don't have the docket number in front of me, but if you look to the responses to the motions to intervene filed below before the district court, the Arizona Medical Board's response confirms that. And was the medical board, they're not an intervener. No, Your Honor, they're not. This is just something cited in the intervention request. They filed a response to the intervention request. Thank you. I would also just like to briefly point out that all of these different changes, these most recent impacts that may affect the credibility of the threat today, are also irrelevant to the Article III injury analysis, which is assessed at the time of filing, and are only relevant to a mootness inquiry if this court decided that it needed to undertake one. I think you've now exceeded your time. Thank you, Your Honor. We would ask the court to find an Article III injury in fact and to remand for consideration on the merits. Thank you. Thank you. This case will be submitted with thanks to counsel for their briefing and arguments and with thanks to everyone for their patience today with our technological problems. With that, we will be in recess until tomorrow. Thank you.
judges: GOULD, HURWITZ, DESAI